IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF WISCONSIN

**BLAKE DRAPER**
on behalf of himself and
all others similarly situated,

                              Case No. 11-CV-535

            Plaintiff,

   vs.

**CAPTEL, INC.**

            Defendant.

## MEMORANDUM OF LAW IN SUPPORT OF JOINT MOTION FOR PRELIMINARY APPROVAL OF CLASS ACTION SETTLEMENT AND JOINT STIPULATION FOR CLASS CERTIFICATION

### INTRODUCTION

The parties have jointly moved for preliminary approval of the settlement reached between the Plaintiff, the putative classes, and Defendant. The settlement agreement provides for a total settlement of $290,000. The settlement is fair and reasonable as it fully and adequately satisfies this Court's criteria for such settlements. As such, the parties respectfully request that the Court certify the Plaintiff's proposed class and certify class counsel and the Named Plaintiff as representatives for the class, and accept the schedule, notices, and claims administration process proposed by the parties including setting a final approval hearing.

## STATEMENT OF FACTS

I. **PROCEDURAL HISTORY**

The Plaintiff filed his class and collective action complaint against Defendant on July 27, 2011. Dkt. 1. He alleges that Defendant maintained a time clock rounding policy which caused him and the putative class members to spend time working for Defendant without compensation, including overtime hours. Id. Defendant filed a Motion to Dismiss in response to Plaintiff's complaint. Dkt. 5. However, after Plaintiff filed his first amended complaint, Defendant voluntarily withdrew its motion and answered the Plaintiff's allegations. Dkt. 12.

The parties agreed to stipulate to conditionally certify the Plaintiff's Fair Labor Standards Act (FLSA) collective class on October 27, 2011. After requesting that Plaintiff's submit additional evidentiary support, the Court granted the parties' stipulation and conditionally certified the following collective class:

> All persons employed by Captel as a captioning assistant at any time during the past three years who, due to Captel's time clock rounding policies, … perform[ed] work for which they were not compensated.

Dkt. 23.

The parties reached this agreement just after the class was conditionally certified. As such, to avoid unnecessary administrative expense by mailing multiple notices, the parties await preliminary approval of the settlement before notice will be mailed to the putative class. As described below, putative class members will be given opportunity to opt into the settlement class by cashing their settlement checks.

2

## II.  SETTLEMENT BACKGROUND

In connection with the parties' negotiated joint stipulation for conditional class certification, Defendant agreed to produce a random sample of time clock and payroll data for approximately 300 members of the collective class. (Declaration of Attorney William E. Parsons in Support of Joint Motion for Preliminary Approval of Settlement (Parsons Dec.) ¶2.) This data contained the punch in and punch out time as well as the total amount of time paid for each shift worked for over 39,000 shifts worked by Captel Captioning assistants during the statutory period. (Parsons Dec. ¶3). Plaintiff's and Defendant's counsel analyzed this data to determine whether Defendant's time clock rounding policy may have resulted in unpaid work time. Plaintiff alleges that the time difference between the hours paid pursuant to the Defendant's rounding policy and the exact minutes recorded on the time clock punch may reflect unpaid time.  Defendants claim that the rounding policy is lawful and any discrepancy between time clock punches and time paid is, at best, de minimus. (Parsons Dec. ¶4).

In addition to this data, Defendant produced the total number of shifts worked by its captioning assistants during the three year statutory period. (Parsons Dec. ¶5). Using this data, Plaintiff's counsel was able to create damages models based on a range of uncompensated time clock punch minutes per day using the average number of uncompensated minutes and the total number of shifts worked on a two and three years basis.

On two occasions counsel for the parties met in person in an effort to resolve the dispute. (Parsons Dec. ¶6). The parties were not able to reach a resolution of the claims through these in person meetings, but continued negotiations subsequent to the second meeting. (Parsons Dec. ¶7). The parties ultimately reached an agreement on the precise number of minutes each shift for which the class would be paid, as well as an agreement on payment of attorney's fees, costs, and liquidated damages. (Parsons Dec. ¶8). That agreement, in broad terms, is as follows:

- $217,500 to be allocated to be class as payment for unpaid time and liquidated damages, to be allocated based on the number of shifts worked during the class period;[1]
- $71,500, subject to Court approval of Plaintiff's fee petition, to be allocated as costs and attorney's fees;
- $1,000 to be allocated to the Named Plaintiff as a service payment.

There is no claims process in this settlement. Each member of the settlement Class will be allocated settlement funds unless they exclude themselves from the settlement. By executing and cashing their settlement check, each member of the Class is electing to opt into this FLSA action and acknowledges that they are releasing their right to bring a wage claim against Defendant for the two year period covered by the settlement under either the FLSA or Wisconsin law.[2] The

---

[1] A small subgroup of the class is also excluded; those who have worked fewer than 60 shifts in the period related to the settlement class. These employees have been excluded since the value of any settlement would likely be $20 or less, and the administrative burden to include them in the class eligible for settlement exceeds the possible value of the settlement proceeds they might otherwise receive.

[2] The Plaintiff's collective class was conditionally certified on January 27, 2011. At that time, the parties were engaged in settlement negotiations. To eliminate the administrative burden of sending

Notice provided to the settlement class members along with the settlement check makes clear that these individuals are releasing their rights under the FLSA and under Wisconsin law.

However, for those individuals who do not cash their settlement checks and who do not exclude themselves from the settlement, FLSA claims will not be released. This is so, as the opt-in requirement of 29 U.S.C. § 216(b) cannot be met where an individual does not consent, in writing, to join the action. However, these individuals will release their Wisconsin law claims as members of the Rule 23 Class, unless they properly exclude themselves during the Notice Period.

In recognition of the efforts taken by the Plaintiff in securing a settlement on behalf of the opt-ins and the Class, the parties have agreed to provide the Plaintiff, Blake Draper, a service payment of $1,000. This modest payment is reflective of the amount of the total settlement, and is substantially lower than that approved in other cases with larger dollar values. (Parsons Dec. ¶9).

Plaintiff's counsel has agreed to petition for attorneys' fees and costs out of the total settlement fund of $71,500. Plaintiff's agreement with the class representative is for a contingent fee of 1/3 of the gross settlement amount. However, given the early resolution of this case, counsel has agreed to petition for a lower of slightly less than 25% of the gross settlement amount. Plaintiff's counsel

---

two sets of notices to the putative class, the parties agreed to send one mailing in the form of a Settlement Notice. As such, putative class members have not yet had opportunity to opt-in to the FLSA collective class, and will be able to do so through their election to accept settlement funds. The proposed Settlement Notice makes clear that individuals electing not to accept settlement funds do not opt-in to the FLSA class and do not release their FLSA claims.

will submit a formal petition for attorneys' fees and costs no later than 21 days prior to the fairness hearing.

## III. PRELIMINARY APPROVAL OF SETTLEMENT IS APPROPRIATE

### A. The Criteria for Preliminary Approval Have Been Satisfied

Resolution of class action litigation by settlement is favored by the federal courts. Isby v. Bayh, 75 F.3d 1191, 1996 (7th Cir. 1996). An FLSA settlement requires court approval in order to be valid and enforceable. Walton v. United Consumers Club, Inc., 786 F.2d 303, 306 (7th Cir. 1986). Employees can only bargain, waive, or modify their right to recovery if the parties agree to the terms of the settlement and the court approves the settlement as a fair and reasonable resolution of the bona fide dispute over FLSA provisions, and the settlement is entered as a stipulated judgment. Lynn's Food Store, Inc. v. United States, 679 F.2d 1350, 1353 (11th Cir. 1982).

Similarly, a Fed. R. Civ. P. Rule 23(b)(3) class action may only be approved if (1) the individual class members are afforded a new opportunity to request exclusion from the settlement; (2) a hearing has been conducted; and (3) the court finds that the settlement is fair, reasonable, and adequate. Fed. R. Civ. P. 23(e). In making this determination, courts "must weigh the probabilities of victory or defeat as indicated by the legal or factual situation presented and determine whether the compromise, taken as a whole, is in the best interests" of the class members. United Founders Life Ins. Co. v. Consumers National Life Ins. Co., 447 F.2d 647, 655 (7th Cir. 1971)(internal quotations omitted). Other factors considered are the

complexity, expense, and likely duration of the litigation; reaction of the class to the settlement; the stage of the proceedings and the amount of discovery complete; the risks of establishing liability; the risks of establishing damages; the ability of the defendants to withstand greater judgment; and the range of reasonableness of the settlement funds to a possible recovery in light of all the attendant risks of litigation. City of Detroit v. Grinnell Corp., 495 F.2d 448, 463 (2d Cir. 1974).

Preliminary approval of a class action settlement allows members of the Settlement Class to receive notice of the proposed settlement terms and the date and time for the fairness hearing at which members of the Settlement Class may be heard and further evidence and argument concerning the fairness, adequacy, and reasonableness of the Settlement Agreement may be presented. See Manual for Complex Litigation at §§ 13.14, 21.632.

### 1. The Proposed Settlement Is Fair, Reasonable and Adequate

The Settlement agreement outlined above is fair and reasonable for the parties. Real disputes exist between the parties as to whether liability exists in this case and, if liability were proven, the extent of the Plaintiff's damages.

Further, the settlement provides all potential damages available to the Class on a two year basis. These amounts are after provision for the Named Plaintiff's service payment as well as any anticipated fees and costs awarded by the Court.

### 2. The Settlement Was Reached Through Arms'-Length Negotiations

The parties have divergent views regarding the Plaintiff's assertions in his Complaint, but were able to work towards a compromise in this matter and did so at

7

arms' length. Counsel for both parties offer their declarations attesting to the same. (Parsons Dec. ¶¶10-12; Declaration of Attorney Thomas P. Godar at ¶¶2-4).

### 3. The Settlement Fund Provides Adequate Relief for the Settlement Class and the Proposed Allocation Method Equitably Divides the Settlement Funds

Except for those employees working fewer than 60 shifts in the settlement period, each participating class member will receive damages for every shift he or she worked at Captel during the statutory period. The number of minutes for which each Class member will receive back pay is the result of careful analysis by Plaintiff's counsel of tens of thousands of lines of data.

The settlement allocation determines for each individual the number of shifts he or she worked during the class period and provides damages based on the number of shifts. This is positively the most equitable and practice method of allocating damages available in this case.

## IV. THE PARTIES' FED. R. CIV. P. 23 CLASS SHOULD BE CERTIFIED

### A. Plaintiff Has Satisfied This Court's Implicit Standards

In addition to the Fed. R. Civ. P. 23(a) and 23(b) standards, this Court requires that its implicit standards for certification are met. The proposed class definition must be definite, that is, ascertainable, precise and objective. <u>Blihovde v. St. Croix</u>, 219 F.R.D. 607, 614 (W.D. Wis. 2003, Crabb, J.). The named Plaintiffs must also be members of the classes they represent.

The members of the Plaintiff's proposed class is definite. The parties have identified these individuals and have calculated their damages. The definitions do

not include any subjective criteria, but include all captioning assistants subject to Defendant's time clock rounding policy.

The individual representing the Class is a member of the class he represents. Blake Draper worked as a captioning assistant and was subject to Defendant's time clock rounding policy.

### B. Plaintiff Has Satisfied the Fed. R. Civ. P. 23(a) Standards

#### 1. Plaintiff's Proposed Classes Are Numerous

This Court has stated that the numerosity requirement of Fed. R. Civ. P. 23(a) requires a "showing that the number of members in the proposed class is so large as to make joinder impracticable. Carnegie v. Household Int'l, Inc., 376 F.3d 656, 663-4 (7th Cir. 2004). Meeting this requirement takes only a good faith non-speculative estimate of the size of the proposed class. Anderson v. Capital One Bank, 224 F.R.D. 444 (W.D. Wis. 2004, Crabb, J.). Plaintiff has made this required showing.

Based on information provided by Defendants, there are more than three thousand members of Plaintiff's Rule 23 Class. (Parsons Dec. ¶13).

#### 2. There are Questions of Law and Fact Common to the Class

The commonality requirement of Rule 23(a)(2) is highly permissive. Blihovde v. St. Croix County, Wis., 219 F.R.D. 607, 616 (W.D. Wis. 2003, Crabb J.). A common nucleus of operative fact is usually enough to satisfy the commonality requirement of Rule 23(a)(2). Rosario v. Livaditis, 963 F.2d 1013, 1018 (7th Cir.

1992). The fact that there is some factual variation among the class grievances will not defeat a class action. Id.

The Plaintiff's First Amended Complaint alleges the following questions of law and fact sufficient to meet the 23(a)(2) standard. These common questions include:

    a.    Whether Captel unlawfully failed to pay overtime compensation to the Named Plaintiff and members of the putative class in violation of and within the meaning of Wisconsin Statute § 103.03 and Wisconsin Administrative Code § DWD 274.03;

    b.    Whether Captel unlawfully failed to pay minimum wages to the Named Plaintiff and members of the putative class in violation of and within the meaning of Wisconsin Statute § 104.02 and Wisconsin Administrative Code § DWD 272.03;

    c.    Whether Captel unlawfully failed to pay wages to the Named Plaintiff and members of the putative class in violation of and within the meaning of Wisconsin Statutes § 109.03;

    d.    The nature and amount of compensable work performed by the Named Plaintiff and members of the putative class;

    e.    The proper measure of damages sustained by the Named Plaintiff and members of the putative class.

The common questions of law and fact, as alleged in Plaintiff's First Amended Complaint are sufficient to meet the Fed. R. Civ. P. 23(a)(2) standard as they arise from a common nucleus of operative fact, namely the pay policy being challenged in this matter; Defendant's uniform time clock rounding policy.

### 3. The Named Plaintiff's Claims Are Typical of the Putative Class Members

The typicality requirement is closely related to the question of commonality. Rosario, at 1018. A plaintiff's claim is typical if it arises from the same event or practice or course of conduct that gives rise to the claims of other class members, and his or her claims are based on the same legal theory. De La Fuente v. Stokley-Van Camp, Inc., 713 F.2d 225, 232 (7th Cir.1983). The commonality and typicality requirements serve to ensure that only those plaintiffs … who can advance the same factual and legal arguments may be grouped together as a class. Mace v. Van Ru Credit Corp., 109 F. 3d 338, 341 (7th Cir. 1997). The typicality requirement, however, focuses only on whether the plaintiff's claim is based on the same legal theory and arises from the same course of conduct that gives rise to the claims of the other members of the proposed class. Rosario, at 1018. Typicality focuses on the defendant's actions leading to the alleged violation and not on possible particularized defenses against certain individual class members. Wagner v. NutraSweet Co., 95 F.3d 527, 534 (7th Cir. 1996).

The Named Plaintiff is a member of the Class he seeks to represent. The legal theories advanced by the Named Plaintiff, to wit – that Defendant maintained a uniform, and illegal, pay policy which denied wages – apply equally to him and the members of the Class he seeks to represent. Because the Plaintiff's claims and Defendant's defenses to those claims involve the same legal theories and arise from the same course of conduct that gives rise to the claims of the putative class members, the typicality element has been satisfied.

11

    4. **The Plaintiff Will Fairly and Adequately Protect the Interests of the Class**

  The final inquiry under Rule 23(a) consists of two parts: (1) the adequacy of the Named Plaintiff's counsel; and (2) the adequacy of representation provided in protecting the different, separate and distinct interests of the class members. <u>Retired Chicago Police Association v. Chicago,</u> 7 F.3d 584, 598 (7th Cir. 1993) (quoting <u>Secretary of Labor v. Fitzsimmons</u>, 805 F.2d 682, 697 (7th Cir. 1986) (en banc)).

  Hawks Quindel, S.C. seeks to represent the putative Class. Hawks Quindel, S.C. has served as Class Counsel in numerous similar wage and hour disputes in front of this Court as well as the Eastern District of Wisconsin. (Parsons Dec. ¶14).

  Further, the Named Plaintiff does not have any antagonistic or conflicting interests with the class he seeks to represent. The Plaintiff has been injured by the same policies as the class he seeks to represent and seeks compensation on his own behalf and on behalf of the Class he seeks to represent for those injuries.

  The Plaintiff has thus satisfied the requirements of Fed. R. Civ. P. 23(a).

  C. **Plaintiff Has Satisfied the Fed. R. Civ. P. 23(b) Standards**

  In addition to meeting the Fed. R. Civ. P. 23(a) standards, the Plaintiff must satisfy one of the Fed. R. Civ. P. 23(b) standards. Where, as is the case in this matter, the Plaintiff seeks monetary damages, the inquiry properly focuses on Fed. R. Civ. P. 23(b)(3). <u>Blihovde</u>, 219 F.R.D. at 619.

  Under Fed. R. Civ. P. 23(b)(3), certification of the class is proper where questions of law or fact common to the entire class predominate over individual

claims and a class action is superior to other methods for fair and efficient adjudication. Fed. R. Civ. P. 23(b). The Seventh Circuit has summarized this standard by stating that, "class action treatment is appropriate and permitted by Rule 23 when judicial economy from the consolidation of separate claims outweighs any concern with possible inaccuracies from their being lumped together in a single proceeding for a decision by a single judge or jury." Mejdrech v. Met-Coil Systems Corp., 319 F.3d 910, 911 (7th Cir. 2003).

        1.      **Common Questions of Law or Fact Predominate**

The question to be answered here is whether the proposed class is sufficiently cohesive to warrant adjudication by representation. Bilhovde, 219 F.R.D. at 620 (citing Amchem Products, Inc. v. Windsor, 521 U.S. 591, 623 (1997)). When challenging a uniform policy, the validity of those policies predominate over individual issues and class certification is appropriate. Id. (citing General Telephone Co. of Southwest v. Falcon, 457 U.S. 147, 147 n. 20 (1982)). Differences in damages between individual class members will not defeat class certification. Id. at 621. Further, where a uniform policy is challenged, individual inquiries into the application of that policy to an individual within the class will not supplant predominance. Id.

Through this settlement, the parties have resolved a dispute regarding Defendant's time clock rounding policy, which Plaintiff alleges violates the law. Because this policy uniformly affected the members of the Class, and because this settlement resolves the parties' disputes about this policy, the Plaintiff believes that

common issues do predominate in this matter, and that the Fed. R. Civ. P. 23(b)(3) standards have been met.

### 2. The Proposed Notice and Manner of Service Are Appropriate

The final Fed. R. Civ. P. 23(b)(3) requirement, superiority, has also been met. In evaluating superiority, the Court considers (1) the interests of the class members in controlling the prosecution of their own claims; (2) the existence of other pending litigation related to the same controversy; (3) the desirability of concentrating the claims in one forum; and (4) the difficulty of managing the class. Fed. R. Civ. P. 23(b)(3).

Plaintiffs are not aware of any other pending litigation regarding this controversy. (Parsons Dec. ¶15).

The desirability of a class in this case is readily apparent by the size of the class represented and by the nature of the alleged violations. The challenged policy harmed each member of the putative class, however, the putative class members' individual interests in prosecuting these claims, in many cases, is small given the relatively small monetary value of each individual's claim. To the extent that any member of the class would prefer to litigate his/her claim separately, the class mechanism will provide him/her an opportunity to opt out of the class and do so. Because a class is a superior method for resolving this dispute, the Plaintiff requests that this Fed. R. Civ. P. 23 class be certified.

### D. The Proposed Notice and Manner of Service Are Appropriate

In order to protect the rights of absent members of a settlement class, the Court must provide the best notice practicable to all members. <u>Phillips v. Carlisle & Jacquelin</u>, 417 US 156, 174-5 (1985). Such a notice should define the class, describe clearly the options open to the class members and deadlines for taking action, describe the terms of the proposed settlement, disclose any special benefits provided to class representatives, provide information regarding attorney's fees, indicate the time and place of the fairness hearing, explain the procedure for distributing settlement funds, provide information that will enable the class members to calculate individual recoveries, and prominently display the address and telephone number of class counsel and the procedure for making inquiries. Manual for Complex Litigation at § 21.312.

The Notice attached to the parties' Settlement Agreement as Exhibit A accomplishes each of the above criteria. Plaintiff's counsel will make all efforts to contact all putative class members to ensure class members are aware of and able to participate in the settlement or to opt out if they so choose.

### CONCLUSION

For the above stated reasons, the parties request that the Court accept their stipulation to certify the Plaintiff's Fed. R. Civ. P. 23 class. Further, because the settlement represents a fair and reasonable resolution of the parties' disputes and because preliminary approval is the preferred method of administering such a

settlement, the parties respectfully request that the Court grant the parties' Motion for Preliminary Approval.

Dated this 11th day of May, 2012.

> **HAWKS QUINDEL, S.C.**
> Attorneys for Plaintiff
>
> By: _____*/s/ William E. Parsons*_____
> William E. Parsons, State Bar No. 1048594
> Email: wparsons@hq-law.com
> David C. Zoeller, State Bar No. 1052017
> Email: dzoeller@hq-law.com
> Danielle M. Schroder, State Bar No. 1079870
> Email: dschroder@hq-law.com
> Post Office Box 2155
> Madison, Wisconsin 53701-2155
> Telephone: 608/257-0040

Dated this 11th day of May, 2012.

> **WHYTE HIRSCHBOEK DUDEK S.C.**
> Attorneys for Defendant
>
> By: _____*/s/ Thomas P. Godar*_____
> Thomas P. Godar SBN 1007751
> Jeffery McIntyre SBN 1038304
> Jonathan D. Bundy SBN 1074290
> Attorneys for Defendant Captel Inc.
> 33 East Main Street
> Suite 300
> Madison, WI 53703
> Telephone: 608-255-4440
> Fax: 608-258-7138
> Email: tgodar@whdlaw.com
> jmcintyre@whdlaw.com
> jbundy@whdlaw.com